# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| EUGENE LINDSAY and KATHERINE MARIE LINDSAY<br><br>Plaintiffs,<br><br>v.<br><br>VST CHEMICAL CORPORATION, FIRE-TROL HOLDINGS, LLC, ICL PERFORMANCE PRODUCTS, INC., and PERIMETER SOLUTIONS, LP<br><br>Defendants. | **MDL NO. 2873**<br><br>**Master Docket no. 2:18-cv-2873-RMG**<br><br>**JUDGE RICHARD GERGEL**<br><br>**Civil Action No.** 2:23-cv-02070-RMG<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For their Complaint against Defendants VST Chemical Corporation ("VST"), Fire-Trol Holdings, LLC ("Fire-Trol"), ICL Performance Products, Inc. ("ICL"), and Perimeter Solutions LP ("Perimeter"), Plaintiffs Eugene Lindsay and Katherine Marie Lindsay ("Plaintiffs"), through undersigned counsel, hereby allege, based upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff Eugene Lindsay has been a firefighter for fifteen years. Throughout that period, he worked with aqueous film-forming foams ("AFFFs") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS include, but are not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2. AFFFs are used by fire departments, including the Daisy Mountain Fire Department, to extinguish fires. Mr. Lindsay was exposed to AFFFs in training sessions, while fighting fires, and, after a fire was extinguished, by "painting" rooms, which entails coating every surface with a thick concentration of foam to prevent fires from rekindling. Throughout his career, Mr. Lindsay had routine dermal exposure to AFFFs.

3. Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFFs with knowledge that they contained highly toxic PFAS, which would expose end users of the product to the risks associated with PFAS. Each of the Defendants supplied AFFFs, either on a manufacturer or distributor basis, to the Daisy Mountain Fire Department that employs Mr. Lindsay.

4. PFAS accumulates in the blood and bodily tissues of humans exposed to the material and persists for long periods of time. These are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS present significant health risks to humans who are exposed to them.

5. In his role as a firefighter, Mr. Lindsay used Defendants' AFFFs in their intended manner, without material change in the products' condition, and in a manner which Defendants were aware that firefighters like Mr. Lindsay would use the product. Mr. Lindsay was unaware of the toxic nature of the PFAS in AFFFs – indeed, Defendants represented their foam products were inert and posed no health hazards.

6. After nearly two decades of exposure to AFFFs, in September 2020 Eugene was diagnosed with kidney cancer. Mr. Lindsay's consumption, and/or dermal absorption

of Defendants' AFFF products caused him to develop the serious medical conditions and complications alleged herein.

7.      Through this action, Mr. Lindsay and his wife, Katherine Marie, seek to recover for the permanent and significant damages sustained as a direct consequence of his exposure to Defendants' AFFF products during the course of Mr. Lindsay's training and firefighting activities.

## PARTIES, JURISDICTION, AND VENUE

8.      Plaintiffs are a married couple residing in Maricopa County, Arizona.

9.      Defendant VST Chemical Corporation ("VST"), is a New York Corporation and does business throughout the United States, including in Maricopa County, Arizona. VST designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

10.     Fire-Trol Holdings, LLC ("Fire-Trol") is a Delaware limited liability company and does business throughout the United States, including in Maricopa County, Arizona. Fire-Trol designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

11.     Defendant ICL Performance Products, Inc. ("ICL") is a Delaware corporation and does business throughout the United States, including in Maricopa County, Arizona. ICL designed, marketed, developed, manufactured, distributed, released, trained

3

users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

12. Defendant Perimeter Solutions, LP ("Perimeter") as successor-in-interest to Auxquimia, S.A.U. ("Perimeter") is a Delaware limited partnership and does business throughout the United States, including in Maricopa County, Arizona. Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

13. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs and Defendants are citizens of different states and the amount in controversy is over $75,000.00, excluding interests and costs.

14. Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiffs state that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiffs would have filed the Complaint in the United States District Court for the District of Arizona as the home venue. Venue is originally proper in the District of Arizona pursuant to 28 U.S.C § 1391 because it is the jurisdictional district in which a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

**GENERAL ALLEGATIONS**

15. Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish fires.

4

16. AFFF has better firefighting capabilities than water because of its unique properties, which extinguish fires by smothering them, ultimately starving them of oxygen.

17. AFFFs can be used to fight fires directly in conjunction with or in place of water, or they can be used to insulate a premises that was previously on fire, to prevent fire from reigniting.

18. AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and other parts of the world. AFFF contains PFAS, which are highly fluorinated synthetical chemical compounds whose family includes PFOS and PFOA.

19. PFAS have been used for decades in the manufacture of AFFF. PFAS chemicals are entirely manmade, and do not naturally occur.

20. Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in humans.

21. AFFF and PFAS are associated with various adverse health effects in humans.

22. Exposure to AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

23. In the 1960s, studies by PFAS manufacturers raised concerns about the health risks caused by these substances.[1]

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6172956/

1572154v.1

24. By the 1970s, animal studies of PFAS revealed immunotoxicity and other adverse effects.

25. By the 1980s, studies by PFAS manufacturers reported immunotoxicity and carcinogenicity effects caused by PFAS.

26. By the 1990s, certain PFAS manufacturers began monitoring the levels of PFAS in the blood serum of their workers. Studies began showing an excess occurrence of prostate cancer in individuals exposed to PFAS.

27. By at least 2010, additional research and testing performed by certain PFAS manufacturers revealed multiple potential adverse health impacts among workers exposed to PFAS, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

28. After the USEPA and other entities began asking manufacturers to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or distributing more of certain other and/or "new" PFAS, including so-called "Short-Chain PFAS."

29. Defendants manufacturing and/or distributing Short-Chain PFAS are aware that Short-Chain PFAS have also been found in human blood. By the mid-2010s, manufacturers were aware that certain Short-Chain PFAS have been found to cause the same triad of tumors, (testicular, liver, and pancreatic), in animals as non-Short-Chain PFAS.

30. Moreover, by the early 2010s, research on Short-Chain PFAS suggested that the technical performance of these Short-Chain PFAS is lower, requiring larger quantities

6

and/or more substances to be used to provide the same performance, leading to the same aggregate exposure for affected humans.

31. Nonetheless, Defendants each downplayed the risks of AFFFs containing PFAS to firefighters like Eugene Lindsay.

32. Even after an independent science panel, known as the "C8 Science Panel," announced in the 2010s that human exposure to PFAS were associated with certain human diseases, including kidney and testicular cancer,[2] Defendants continued to downplay the risk of AFFFs.

33. At all relevant times, Defendants through their acts and omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the risks of exposure to AFFFs containing PFAS.

34. At all relevant times, Defendants encouraged continued and increased use of PFAS by their customers and others and tried to encourage and foster the increased and further use of PFAS through the promotion of AFFFs to fire departments, including the fire department where Eugene Lindsay works, while downplaying the risks.

35. At all relevant times, Defendants were and/or should have been aware, or knew and/or should have known, that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials and/or sale of AFFFs containing PFAS would result in the contamination of the blood

---

[2] https://ehp.niehs.nih.gov/doi/pdf/10.1289/ehp.1306615

7

and/or body of Eugene Lindsay with PFAS, causing injury, irreparable harm, and/or unacceptable risk of such injury to Eugene Lindsay.

**Defendants' AFFFs were used by the Daisy Mountain Fire Department**

36. Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing toxic PFAS that were used by fire departments around the country, including county and municipal firefighting departments.

37. Defendants each designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS in such a way as to cause the exposure to and ultimate contamination of Eugene Lindsay's blood and body with PFAS, resulting in persistence and accumulation of PFAS in his blood and body.

38. Each of the Defendants manufactured, sold, and/or distributed AFFFs to the Daisy Mountain Fire Department, thereby causing the contamination of the blood and/or body of Eugene Lindsay with PFAS.

39. VST manufactured and/or sold AFFFs to the Daisy Mountain Fire Department, based upon information and belief, during all relevant time periods. VST's AFFFs were used by firefighters in the Daisy Mountain Fire Department, including Eugene Lindsay, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by VST thereby exposing Eugene Lindsay to PFAS.

40. Fire-Trol manufactured and/or sold AFFFs to the Daisy Mountain Fire Department, based upon information and belief, during all relevant time periods. Fire-

Trol's AFFFs were used by firefighters in the Daisy Mountain Fire Department, including Eugene Lindsay, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Fire-Trol thereby exposing Eugene Lindsay to PFAS.

41.     ICL manufactured and/or sold AFFFs to the Daisy Mountain Fire Department, based upon information and belief, during all relevant time periods. ICL's AFFFs were used by firefighters in the Daisy Mountain Fire Department, including Eugene Lindsay, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by ICL thereby exposing Eugene Lindsay to PFAS.

42.     Perimeter manufactured and/or sold AFFFs to the Daisy Mountain Fire Department, based upon information and belief, during all relevant time periods. Perimeter's AFFFs were used by firefighters in the Daisy Mountain Fire Department, including Eugene Lindsay, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Perimeter thereby exposing Eugene Lindsay to PFAS.

**The Plaintiff's exposure to Defendants' AFFFs**

43.     Eugene Lindsay and his wife, Katherine Marie, have been happily married since September 2012.

44.     Eugene Lindsay began his fire service career in 2003, with the Pinewood Fire Department, serving the area of Munds Park, Arizona. He was a firefighter with the Pinewood Fire Department for one year.

9

45. Mr. Lindsay left the Pinewood Fire Department and began service as a firefighter for Rural Metro for two years.

46. Mr. Lindsay left Rural Metro and began service as a firefighter for the Daisy Mountain Fire Department serving the area of Anthem, AZ. He has been with the Daisy Mountain Fire Department for 16 years.

47. Mr. Lindsay was first exposed to AFFFs firefighting training academy, where he trained with Class A and B firefighting foams. During training, it was common to have AFFFs on his body from head to toe, and it was common to have direct skin contact with AFFFs while cleaning up after drills. At the time, he was led to believe that the foam was generally inert and provided no hazard to his health. After his training, in service as a firefighter, Mr. Lindsay was exposed to AFFFs while spraying foam during firefighting operations.

48. At the Daisy Mountain Fire Department, Mr. Lindsay's responsibilities included driving, pumping, and maintaining the fire truck, which included pumping AFFFs, cleaning AFFFs out of the firefighting equipment, and adding new foam as needed. While operating and cleaning equipment using foam, he was never given any instruction from the manufacturers or distributors to avoid contact with AFFFs, or that the materials were otherwise harmful.

49. Over the course of 17 years as a firefighter with the Daisy Mountain Department, from 2006 to the present, Eugene Lindsay routinely used, handled, and came in direct contact with AFFFs containing PFAS produced, manufactured, sold, and/or distributed by the Defendants. His exposure to these products was in the ordinary course

of his firefighting activities, and was in the standard way that Defendants anticipated that these products would be used and handled.

50.    At no time in his career was Mr. Lindsay warned by the Defendants that their products carried a substantial risk of adverse medical outcomes, including cancers such as testicular cancer.

51.    In September 2020, at the age of 38, Eugene Lindsay was diagnosed with kidney cancer, with a significant tumor, which necessitated the surgical removal of approximately 40% of his kidney. He had no family history of kidney cancer, nor any genetic predisposition. He is not and has never been a smoker. His medical treatments continue to this day.

**FIRST CLAIM FOR RELIEF**
**(Strict Products Liability-Design Defect and Failure to Warn)**

52.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 51 of this Complaint as if they were fully set forth herein.

53.    Upon information and belief, Defendants are the manufacturers and/or distributors of the AFFFs containing PFAS to which Eugene Lindsay was exposed.

54.    Defendants are each the sellers of the AFFFs containing PFAS to which Eugene Lindsay was exposed. Defendants sell AFFFs in the ordinary course of their business.

55.    The use of the AFFFs in training activities and routine firefighting activities was the purpose for which the AFFFs were intended and was reasonably foreseeable by

11

Defendants. The AFFFs were used in substantially the same condition in which they were sold.

56. A reasonable firefighter would not expect the AFFFs used in training activities and routine firefighting activities to expose him to a known carcinogen.

57. AFFFs failed to perform as safely as an ordinary firefighter would expect when the AFFFs were used in the reasonably foreseeable manner of routine firefighting activities.

58. Defendants designed an unreasonably harmful product that was inherently defective in that it contained known carcinogens.

59. Defendants had full knowledge that AFFFs contained known carcinogens and failed to warn Plaintiffs of the unreasonably dangerous risks.

60. Eugene Lindsay has suffered lasting and ongoing personal injuries resulting from the defective and unreasonably dangerous nature of the product caused by its defective design.

61. Eugene Lindsay was a healthy young man with no history of kidney cancer, making his likelihood of developing the disease quite low.

62. As a direct and proximate result of the foregoing, Plaintiffs have been damaged, both via personal injuries and through loss of consortium, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Negligent Failure to Warn)

63. Plaintiffs incorporate the allegations contained in paragraphs 1 through 62 of this Complaint as if they were fully set forth herein.

64. Defendants knew, through internal and external research, that AFFFs were likely dangerous when used in training activities and routine firefighting activities.

65. Defendants had no reason to believe that Plaintiffs would realize the danger of AFFFs, including their carcinogenic effects.

66. Defendants failed to exercise reasonable care to inform Plaintiffs of AFFFs dangers or of the facts which make it likely to be dangerous.

67. Because of Defendants' failure to warn Plaintiffs about the dangers of AFFFs, Plaintiffs suffered personal injuries.

## THIRD CLAIM FOR RELIEF
### (Negligent Plan or Design of Product)

68. Plaintiffs incorporate the allegations contained in paragraphs 1 through 67 of this Complaint as if they were fully set forth herein.

69. AFFFs, products designed by Defendants, are dangerous for use in training activities and routine firefighting activities, which is the intended use of AFFFs.

70. Defendants failed to exercise reasonable care in continuing to design and failing to re-design AFFFs which contain dangerous carcinogens.

71. Because of Defendants' defective design of AFFFs Plaintiffs suffered personal injuries.

## FOURTH CLAIM FOR RELIEF
### (Punitive Damages)

72. Plaintiffs incorporate the allegations contained in paragraphs 1 through 71 of this Complaint as if they were fully set forth herein.

73. Upon information and belief, Defendants first started manufacturing, marketing, and selling AFFFs many years ago.

74. Over the ensuing years, Defendants either knew or should have known that an increasing volume of industry research demonstrated that AFFFs cause serious medical effects in humans who are exposed to them dermally, including kidney cancer. Throughout that period, and up to the present, Defendants have never warned firefighters or the broader public of the known health risks of AFFFs.

75. Defendants had obligations under various laws, including but not limited to 15 U.S.C. § 2607(3), to disclose to various government agencies the health risks of AFFFs containing PFAS, including in particular the carcinogenic effects of these products of which Defendants were aware. Nonetheless, Defendants intentionally withheld from applicable government agencies their knowledge of the hazardous health effects AFFFs can cause to fire fighters like Eugene Lindsay.

76. Defendants consciously pursued this course of conduct – the manufacture, marketing, and sale of a deficient and dangerous product with no representation to expected users of this known danger – in order to serve their own profit motives.

77. Defendants pursued the actions set forth above despite their knowledge of the substantial risk that AFFFs posed to firefighters like Eugene Lindsay.

14

78. Defendants acted with an evil mind, meriting an award of punitive damages in an amount to be proven at trial.

### **FIFTH CLAIM FOR RELIEF**
**(Loss of Consortium)**

79. Plaintiffs incorporate the allegations contained in paragraphs 1 through 78 of this Complaint as if they were fully set forth herein.

80. Katherine Marie is and was at all times relevant to this action, the legal spouse of Eugene Lindsay, and they have at all times relevant to this action, lived together as husband and wife.

81. As a proximate result of the personal injuries suffered by Eugene Lindsay, as described in this Complaint, Katherine Marie Lindsay has been deprived of the benefits of their marriage including his love, affection, society, and consortium, and other husbandly duties and actions. Eugene Lindsay provided Katherine Marie Lindsay with all of the benefits of a marriage between husband and wife, prior to his exposure to Defendants' hazardous AFFFs and the resulting injuries described herein.

82. Kathrine Marie Lindsay has also incurred the costs and expenses related to the medical care, treatment, medications, and hospitalization to which Eugene Lindsay was subjected for the physical injuries he suffered as a proximate result of his use of the Defendants' AFFFs. Katherine Marie Lindsay will continue to incur the future costs and expenses related to the care, treatment, medications, and hospitalization of Eugene Lindsay due to his injuries from exposure to Defendants' hazardous AFFFs.

83. Kathrine Marie Lindsay has suffered loss of consortium, as described herein, including the past, present, and future loss of her husband's companionship, services, society, and the ability of Eugene Lindsay to provide Katherine Marie Lindsay with the benefits of marriage, all of which has resulted in her pain, suffering, and mental and emotional distress and worry.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

**WHEREFORE**, Plaintiffs Eugene and Katherine Marie Lindsay hereby request that the Court enter judgment against all Defendants as follows:

a. For general, consequential, special, and compensatory damages, including but not limited to pain and suffering, mental anguish, lost wages, lost future income, and loss of consortium;

b. For Plaintiffs' costs and other expenses incurred in this action;

c. For punitive damages; and

d. Such other and further relief as the Court deems just.

Dated:  May 12, 2023

By:  */s/ Jason W. Burge*

FISHMAN HAYGOOD LLP
Kerry J. Miller
Jason W. Burge
Danielle Teutonico
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
Email:   kmiller @fishmanhaygood.com
             jburge@fishmanhaygood.com
             dteutonico@fishmanhaygood.com

16

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day 12th of May, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

*/s/ Jason W. Burge*

1572154v.1